UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DISTRICT AT LONDON

CIVIL ACTION NO. 6:13-CV-85-KKC

JOHNNY DELPH                                                                    PLAINTIFF

v.                                           **OPINION AND ORDER**

CAROLYN W. COLVIN,
Commissioner of Social Security.                                    DEFENDANT

* * * * * * * * * *

This matter is before the Court upon cross-motions for summary judgment on

Plaintiff Johnny Delph's appeal of the Commissioner's denial of his application for

Supplemental Security Income. The Court, having reviewed the record, will grant the

Commissioner's motion and deny Delph's motion because substantial evidence supports the

Administrative Law Judge's decision.

## I. FACTS AND PROCEDURAL HISTORY

Delph alleged disability beginning November 1, 2008, and filed an application for

Supplemental Security Income ("SSI") on December 3, 2009. (AR, 122). The claim was

denied initially on April 8, 2010, and again upon reconsideration on July 13, 2010. (AR, 60,

61). He then filed a written request for a hearing before an Administrative Law Judge

("ALJ"). (AR, 12). After the hearing, the ALJ issued a decision denying Delph SSI benefits

on December 28, 2011. (AR, 16–24).

At the time of his application for SSI, Delph was 45 years old and had an eleventh

grade education. (AR, 122, 40). Delph alleges that he injured his back and leg a coal-mining

accident in 1990, and that he did not work from that time until 2000. (AR, 40–41). Since

2000, Delph has work experience as a construction worker and rough carpenter. (AR, 406).

He claims that he became disabled on November 1, 2008 due to back and leg problems arising from his accident in 1990. (AR, 122, 153).

In determining whether a claimant has a compensable disability under the Social Security Act, the regulations provide a five-step process that the ALJ is required to follow. 20 C.F.R. § 404.1520(a)–(e); *see Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). If the claimant is found to be not disabled at any step, the inquiry stops, and supplemental benefits are denied. The five steps, in summary, are as follows:

(1)     If the claimant is currently engaged in substantial gainful activity, he is not disabled.

(2)     If the claimant is not engaged in substantial gainful activity, his impairment must be severe before he can be found disabled.

(3)     If the claimant is not engaged in substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

(4)     If the claimant's impairment does not prevent him from doing past relevant work, he is not disabled.

(5)     Even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Id.* The burden of proof is on the claimant to prove that he is disabled through the first four steps of the process. *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5 (1987). If the ALJ reaches the fifth step without finding that the claimant is not disabled, then the burden shifts to the Commissioner to consider his residual functional capacity, age, education, and past work experience to determine if he could perform other work. Importantly, the Commissioner only has the burden of "proving that there is work available in the economy that the claimant can perform." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). If the

Commissioner fails to meet this burden at step five, then the claimant will be deemed disabled. 20 C.F.R 404.1520(f).

In this case, the ALJ began his analysis at step one by determining that Delph had not engaged in substantial gainful activity since his application date, December 3, 2009. (AR, 18). At step two, the ALJ determined that Delph has the following severe impairments: lumbar degenerative disc disease; left knee injury; and pain disorder with psychological features. (AR, 18). Continuing to the third step, the ALJ determined that Delph does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (AR, 18). The ALJ then found that, based on the medical evidence and record, Delph has the residual functional capacity ("RFC") to perform light work as defined in the regulations, except that the he should have no more than frequent exposure to vibration or work hazards; and that he would be limited to simple to simple, routine, repetitive tasks with gradual and infrequent changes in the work setting. (AR, 19).

At step four, the ALJ determined that Delph could not perform his past relevant work. (AR, 22). However, after considering testimony from the Vocational Expert, the ALJ determined that based on Delph's age, education, work experience and RFC, there are other jobs that exist in significant number in the national economy that Delph could perform. (AR, 23). Accordingly, the ALJ determined that Delph was not disabled at step five. (AR, 23).

The ALJ's decision that Delph is not disabled became the final decision of the Commissioner when the Appeals Council subsequently denied his request for review on February 22, 2013. (AR, 1). Delph has exhausted his administrative remedies and filed a timely action in this Court. This case is now ripe for review under 42 U.S.C. § 405(g).

## II.    GENERAL STANDARD OF REVIEW

The decision of the Commissioner must be supported by substantial evidence. *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). Once the decision of the Commissioner is final, an appeal may be taken to the United States District Court pursuant to 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to the proper legal standards. *See Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In reviewing the decision of the Commissioner, courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or made credibility determinations. *See id.* Rather, the court must affirm the Commissioner's decision so long as it is supported by substantial evidence, even if the court might have decided the case differently. *See Her*, 203 F.3d at 389–90. However, the court must review the record as a whole, and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

## III.    ANALYSIS

On appeal, Delph offers two reasons in support of his argument that the ALJ's decision is not supported by substantial evidence and was not decided by proper legal standards. First, he contends that the ALJ failed to assign greater weight to the opinion of his treating physician, Dr. Michael Moore, when assessing Delph's RFC. Second, he asserts that the ALJ improperly omitted an essential restriction when he asked the Vocational

Expert the hypothetical question on which the ALJ relied in determining that there were other jobs that Delph could perform.

### 1. Treating Physician's Opinions

The Court turns first to the ALJ's analysis of the opinions of Delph's treating physician, Dr. Moore. Delph contends that the ALJ failed to adopt Dr. Moore's opinion that he was limited to lifting or carrying objects less than ten pounds; that he could stand or walk less than two hours in an eight hour workday; that he is sometimes limited in reaching; that he could sit less than six hours in an eight hour workday; that he is limited in pushing and/or pulling in both the upper and lower extremities; that he should never be engaged in climbing, balancing, kneeling, crouching, crawling, or stooping; and that he should not be exposed to temperature extremes, vibration, humidity/wetness, and hazards. (AR, 520–23).

In general, an ALJ should give more weight to the opinions of treating physicians than other sources because:

> these sources are likely are to be the medical professionals most able to provide a detailed longitudinal picture of [the Claimant's] medical experiment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)). However, the Sixth Circuit has consistently stated that the "Secretary is not bound by the treating physician's opinions, and that such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence." *Bogle v. Sullivan*, 998 F.2d 342, 347–48 (6th Cir. 1993) (citing *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990)). Put another way, Treating-source opinions receive controlling weight if "(1) the opinion is well-supported by medically

acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in [the] case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (internal citations omitted); 20 C.FR. § 404.1527(c)(2). Where an ALJ grants little weight to a treating physician's opinion, he must cite legitimate reasons for doing so. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The opinion of state agency consultants and other program physicians can be given great weight if supported by the evidence because they are experts in the Social Security disability field. 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); SSR 96-6p.

Here, the ALJ gave little weight to Dr. Moore's opinion and cited several reasons for doing so. First, the ALJ found Dr. Moore's own treatment notes did not support the level of impairment asserted by his assessment. (AR, 21). More specifically, the ALJ found that Dr. Moore's treatment notes were not detailed and reflected that his treatment of Delph's injuries has been conservative in nature, involving primarily medication management. *Gayheart*, 710 F.3d at 376; (AR, 20). Second, the ALJ found that physical examinations of Delph, which showed that he could ambulate without difficulty and has negative straight leg raising with no weakness, sensory loss, or reflex asymmetry, were inconsistent with Dr. Moore's opinions. (AR, 21). The ALJ gave great weight to Dr. Barry Burchett's consultative physical examination of Delph, which revealed that although Delph walked with a mild limp, he was able to walk, perform tandem gait, and squat without difficulty. (AR, 21). Third, the ALJ found that evidence of Delph's activities of daily living reveals that he engages in a variety of daily activities including cooking, shopping, and independently managing his affairs. (AR, 21); *see Hash v. Comm'r of Soc. Sec.*, 309 Fed. Appx. 981, 987 (6th Cir. 2009).

After reviewing the record, the Court finds that the ALJ's cited reasons for discounting the opinions of Dr. Moore are legitimate and were supported by substantial

evidence. The finding that Dr. Moore's treatment notes and approach from 2000 forward were not consistent with his August 2010 evaluation, coupled with the other medical evidence and Delph's own testimony about his daily activities, amounts to substantial evidence to support the ALJ's decision to give little weight to Dr. Moore's restrictions when assessing Delph's RFC.

### 2. Hypothetical Question Posed to the Vocational Expert

Next, the Court turns to Delph's second argument: that the ALJ improperly omitted an essential restriction when he posed the hypothetical to the Vocational Expert. The ALJ relied on the Vocational Expert's opinion during his analysis under step five. As previously noted, at this stage of a disability determination, the Commissioner has the burden of establishing that there is sufficient work in the national economy that the claimant can perform given his RFC, age, education, and work experience. *See* 20 C.F.R. § 404.1520(g); 20 C.F.R. § 404.1512(g); 20 C.F.R. § 404.1560(c). "To meet this burden, there must be a finding supported by substantial evidence that plaintiff has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (internal quotations and citation omitted). "Substantial evidence may be produced through reliance on the testimony of a vocation expert in response to a hypothetical question, but only if the question accurately portrays plaintiff's individual physical and mental impairments." *Id.* (internal citations omitted).

The hypothetical question on which the ALJ relied posed the individual as capable of light exertion, that should not have more than frequent exposure to vibration or work hazards, and that is limited to simple, routine, repetitive tasks with gradual and infrequent changes in the work setting. (AR, 55–56). Delph asserts the ALJ improperly excluded a provision that the individual is moderately limited in his ability to tolerate stress and pressure from day-to-day employment. Delph further contends that this limitation

7

precludes the ability to produce a certain quota, and therefore, the hypothetical question should have included a provision for jobs not requiring a quota. The latter contention is without merit and the Court will not address it, as there was no medical evidence produced regarding Delph's ability to produce certain quota. *See* (AR, 405–410).

Delph asserts that he cannot tolerate day-to-day stress and pressure is based on Dr. Jeanne Bennett's opinions from her consultative examination. Dr. Bennett opined that Delph's capacity to understand, remember, carry out instructions, and sustain attention and concentration towards the performance of simple and repetitive tasks is not affected by his impairment. (AR, 410–11). She further opined that Delph's ability to tolerate stress and pressure of day-to-day employment is affected by his impairment with moderate limitations noted, and that his capacity to respond appropriately to supervision, coworkers, and work pressure in a work setting is affect by the impairment with slight limitations noted. (AR, 410–11).

For purposes of evaluating an SSI claim, a mental impairment must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.07(B). A marked limitation means more than moderate but less than extreme. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §112.00.

The ALJ gave great weight to Dr. Bennett's opinions and found that Delph has "some moderate, although not debilitating, mental limitations in complex work with frequent changes due to psychological feature of his pain disorder." (AR, 21–22). The ALJ found that Delph did not have a more than moderate limitation in his activities of daily living, social functioning, and maintaining concentration, persistence, and pace. (AR, 18). Delph also never experienced any extended period of decompensation. (AR, 18). The ALJ

concluded that although Delph "may become nervous at times, the evidence showed that he was able to think clearly, use good judgment, and act in his own best interest." (AR, 22). The ALJ also noted that Delph has received no mental health treatment from a specialist, nor was he referred by his primary care physician to a specialist since the alleged onset date of his disability. (AR, 22). The ALJ concluded that the evidence supported that the Delph has the mental capacity to perform simple tasks with gradual and infrequent changes. (AR, 22).

This Court finds that the ALJ's conclusions as to Delph's mental limitations were supported by substantial evidence. The ALJ properly considered the evidence related to Delph's mental limitations and found them to only moderately affect his ability to work. Consequently, the hypothetical question posed to the Vocational Expert accurately portrayed Delph's mental limitations because it included a provision that the individual is limited to simple, routine, repetitive tasks with gradual and infrequent changes in the work setting. The ALJ did not err by failing to include additional mental limitations as there was not sufficient evidence that any limitation was more than moderate in accordance with the Social Security regulations.

Accordingly, Delph has failed to establish entitlement to a period of disability and disability insurance benefits. As set forth above, a review of the entire record reveals that substantial evidence supports the ALJ's RFC finding and that the Vocational Expert identified jobs that would be compatible with his individual vocational characteristics and RFC. In conclusion, the decision of the ALJ that Delph is not disabled is supported by substantial evidence and was made pursuant to the proper legal standards.

## IV.    CONCLUSION

For the reasons set forth above, the Court, being fully and sufficiently advised, hereby **ORDERS** as follows:

(1) Plaintiff's Motion for Summary Judgment (DE 10) is **DENIED**; and

(2) Defendant's Motion for Summary Judgment (DE 11) is **GRANTED**.

(3) the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards; and

(4) a judgment consistent with this Opinion and Order will be entered contemporaneously.

This is the 16th day of April, 2014.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY